Staples, J.
delivered the opinion of the court.
This case is the supplement to that of Wood et al. v. Krebbs et als., reported in 30 Gratt. 708. It was held by this court in that case, that Wood and Smith were not bona fide purchasers for value; that it was incumbent upon them, in the exercise of due diligence, to examine the records of the proper court. Had they done so, they would have discovered the deed of trust executed by Peter Cain on the 3d of April, 1854, constituting a lien on the property in controversy; and they must be held therefore to have had notice of the existence of that deed.
*688 The present appellant purchased the same property from Wood and Smith. He was made a party to the suit, although it would seem he was never served with process, nor did he appear in person or by counsel. This court affirmed the decree of the circuit court, but remanded the cause for further proceedings. After the case went back to the court below the appellant filed his petition, stating that he had made permanent improvements on the land, while holding the same under a title believed by him to be good, and praying that he might be allowed compensation for the same. Upon the hearing, his petition was dismissed by the circuit court, that court being of opinion that the appellant, under the circumstances of the case, is not entitled to be allowed the value of his improvements, or any part thereof. The question before us is as to the correctness of that decree.
The claim of the appellant for compensation is resisted on three grounds:
First. That the appellant being a purchaser from Woods and Smith, and being a party to this suit when the former decree was rendered, is bound by that decree, and by all the equities which attach to his vendors. And as they were held not to be purchasers, for value without notice under the operation of the registry acts, neither can the appellant claim to be so considered; and not being such a purchaser, he is not entitled to any improvements he may have made on the land.
Secondly. It is insisted that the statute under which the claim for improvements is made, only applies as between the true owner of the land on one side, and a person making the improvements under a defective title on the other, and that it has no sort of application to encumbrances, whether by mortgage, deed of trust, or judgment; which are matters of record, and of *689 the existence of which all persons must at their peril take notice. And
Thirdly. If the claim of the appellant he just, he has been fully compensated for all his improvements by the uninterrupted use and occupation of the land during the long period he has held it.
As there is some difficulty in the minds of some of the judges with respect to the first two grounds suggested, they null be passed by without further consideration.
¥e come then to the third ground, and that is that the appellant has been fully compensated for all his improvements by the rents and profits of the land. In reply to this, it is insisted by his counsel, that “the appellant as purchaser cannot be held liable for rents and profits to the appellee, a creditor; that a mere encumbrancer can have no claim to rents and profits, unless it be after a decree of sequestration; and consequently the defendant’s use and occupation of the land cannot be set off by such creditor against the defendant’s claim for improvements.”
Before examining the provisions of the statute, upon this point, it may be useful to enquire what are the doctrines of courts of equity upon the subject of permanent improvements by a bona fide holder of land, claiming under a defective title. It seems to be well settled, that where the legal title is in one person who has made improvements in good faith, and the equitable title is in another, who is compelled to resort to a court of equity, in support of his equitable claim, that court acting upon the principle that he who seeks equity, must himself do what is equitable, will require as a condition of such relief, that the true owner shall make compensation for such improvents. And so, where the owner asserts a claim for rents and profits, and an account is ordered, any permanent improve *690 ment made by tbe purchaser will be allowed as a setoff against the rents and profits; or if tbe owner is guilty of a fraud in permitting such improvements, with a knowledge of tbe claim, and without giving notice to. tbe possessor, or is guilty of gross laches in asserting bis claim after be is apprised of it, be will not be permitted to recover, except upon making compensation. 2 Story Eq. Jur., § 799, 1237; Morris v. Terrell, 2 Rand. 6; Walker v. Beauchler, 27 Gratt. 511.
But in all these cases, tbe tenant must of course account for tbe value of tbe use and occupation.
"Whether the possessor of a defective title can claim for improvements against tbe true owner, where tbe latter asserts bis title at law, and has been guilty of no. fraud or laches, is a question of some difficulty, and one about which tbe authorities are not agreed.
To remove all difficulty on this subject, and to prescribe an uniform rule in all this class of cases, tbe provisions found in chapter 131, § 32, and chapter 132, Code of 1873, pp. 963-966, were adopted.
"Without intending to express any decided opinion on tbe subject, I am inclined to think these statutes apply only to cases arising between tbe owner of tbe estate on the one band, and tbe party claiming compensation for improvement on tbe other. By the express terms of tbe ninth section, they do not extend to any suit by a mortgagee, bis heirs, or assignees,, against a mortgagor, bis heirs, or assignees, for tbe recovery of .the mortgaged premises.
If, as contended, tbe provisions with respect to rents, and profits have no application to tbe ease of a creditor by trust deed, or by judgment, if as against them tbe possessor may claim for improvements without being accountable for rents and profits, it is apparent that a creditor may be in many cases improved out of bis *691 lien and his debt, without fault on his part and without possibility of protection or indemnity.
The most cursory examination will show that a person who claims compensation for improvements under these statutes, must in all cases account for rents and profits.
Under the very first section of chapter 132, the prayer of the petitioner is, that he may be allowed for his improvements over and above the value of the use and occupation of the land; and it is only upon a petition so framed, the court is authorized to interpose and to suspend the execution of the judgment or decree. The second section mates it incumbent upon the jury to estimate against the petitioner, the clear annual value (exclusive of the improvements,) of the premises during the time he was in possession; and other sections provide, that this value, and other damages if any, in behalf of the plaintiff, and the allowance to the petitioner for improvements shall be offsets one against the other.
Other provisions of the chapter lead to the same conclusion. The whole enactment is founded upon the idea, that the defendant as tenant in possession, is entitled to compensation for improvements made in excess of the benefits derived from the use and occupation of the land; and it is only upon avering and showing such excess he is entitled to arrest the execution of the judgment or decree against him, and to assert a lien upon the land.
A party therefore who files his petition under the statute, is only entitled to relief, and to such relief as is afforded by its provisions, whether his claims be asserted against the true owner, or mere encumbrancer.
There is nothing inequitable in this; for if the lien of the encumbrancer be a valid lien, the title of the *692 tenant in possession and all of his improvements are in subordination to that lien; and if he has been fully for those improvements by the use of the land itself, he has sustained no loss or injury. This is certainly more just than to allow the tenant the use of the land for nothing; and at the same time, to allow him to claim against the encumbrancer for improvements.
What is here said, is in reference to the statute exclusively. For as a general rule, a creditor, who records his deed of trust, or dockets his judgment, has done all he is bound to do; and parties dealing with the property do so at their peril, and in complete subjection to the lien. Graeme v. Cullen, 23 Gratt. 266, 307.
In the case before us the appellant estimates his improvements at $4,000. In this estimate he includes certain expenditures for lime and fencing, which can not be considered as permanent improvements, in any just acceptation of the term.
Some of the appellant's witnesses say, the improvements have increased the value of the land $2,500 or $2,600, others say, $3,000, and none of them exceed the latter sum.
The commissioner, to whom the matter was referred, estimates them at $2,653, and no exception was taken to this report in this respect. That estimate probably approximates the truth. Complaint is made that the commissioner instead of reporting the value of the improvements, has simply reported the “value of the land, as increased by the improvements.” If there be any defect in this finding it is as much due to the appellant, as to any one else; for this is the enquiry directed by the decree of November, 1878, entered by the consent of the appellant, and this is the enquiry addressed by his counsel to all the witnesses.
*693 Besides, tliis is all that is necessary under the statute; for all that the jury can estimate, is the amount to which the value of the premises is actually increased at the time of the assessment.
We come now to the question of rents and profits. The commissioner reports the annual value of the land without the improvements at $300, and no objection was made to the report in this particular. TJpon this point there is no controversy. All the witnesses agree, and the appellant makes no complaint. He acquired possession in 1868, and his improvements were made chiefly in 1872. Down to the time of the decree in this cause, in December, 1879, the defendant had held possession more than eleven years, which makes an aggregate of $3,300 of rent, without any charge of interest; $300 in excess of the highest estimate of his improvements. The appellant is still in possession enjoying the rents and profits of the estate. He has therefore been more than compensated for all his expenditures, including the peaceful and uninterrupted use of the land for more than twelve years.
It is very true he loses the land itself; hut he has his proper remedy against his vendors, who are admitted to be solvent, upon their covenants of warranty. But even though he had not, neither his misfortunes nor his follies can give him any just claim against the appellees.
Complaint is also made that the eoui’t beloAv referred the matter to its commissioner for enquiry, instead of empaneling a jury to make proper assessment as required by the statute. This is a very extraordinary, complaint coming from the appellant, in vieAV of the fact that he himself in his petition asked for the reference to a commissioner instead of a jury. And in conformity with his prayer, and by his express consent, a decree was entered directing the commissioner to *694 make the enquiry for his benefit; and no exception was ever taken upon that ground until after the case was brought to this court. A party may of course waive a trial by jury in a civil case; it is the constant practice; and the appellant has effectually done so in this case.
This disposes of all questions arising on the merits of this case. It only remains to consider the objections to so much of the decree as directs the sale of the property upon a credit.
By the provisions of the deed under which the appellee claims, the property is to be sold for cash. Under the decree of the circuit court, intended to enforce that decree, it is provided that the sale shall be one-fourth cash, and the residue in three equal annual payments. It will thus be seen, the terms of sale fixed by the deed, are entirely different from those prescribed by the decree. This departure is founded upon the supposed consent of parties by their counsel.
Without now minutely examining the affidavits filed, it is very apparent there has been much misapprehension both on the part of the court below and the counsel with respect to the supposed consent as justified and even required that so much of the decree of March, 1879, as related to the terms of sale, should be set aside and annulled. That decree being out of thé way, the circuit court ought to have directed a sale for cash in conformity with the deed of trust.
It is not often that the debtor or those representing him are found insisting upon a rigorous compliance with such terms. Whatever may be the motives that prompt the demand, this court has no alternative but to yield to it, where it is in conformity with the contract of the parties.
So much of the decree of the circuit court therefore as'directs the sale on credit must be reversed; and in *695 all other respects affirmed; and a decree entered here for the sale of the property for cash, as required by the trust deed.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decrees aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court, upon the facts disclosed by the affidavits of witnesses, ought upon the petition for a rehearing to have set aside so much of the decree of the 18th of March, 1879, as directed a sale of the property upon a credit, and in lieu thereof to have entered a decree for cash, in conformity with the provisions of the deed of trust. The court is further of opinion that there is no other error in the said decree. Wherefore, for the error aforesaid, it is decreed and ordered that the said decrees of 18th of March, 1879, and of June, 1879, he reversed and annulled to the extent and in the particulars herein mentioned, and in all other respects affirmed; and that the appellee pay to the appellants their costs by them in this behalf expended.
It is further decreed and ordered that the cause be remanded to the circuit court with instructions to that court to enter a decree in conformity with this decree.
Decree reversed in part; aeeirmed in part.